IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAUSCH & LOMB INCORPORATED and PF CONSUMER HEALTHCARE 1 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SBH HOLDINGS LLC,<br><br>Defendant. | Civil Action No. 20-1463-GBW |

## MEMORANDUM ORDER

Pending before the Court is Defendant's Motion to Strike, Modify or Vacate ("Motion to Strike") (D.I. 245) and Defendant's Motion to Stay ("Motion to Stay") (D.I. 243) (together, the "Motions"), both of which have been fully briefed in a combined opposition and reply (D.I. 248; D.I. 249).[1] For the following reasons, the Court denies the Motions.

I.  **BACKGROUND**

The Court writes for the benefit of the parties and, as such, only briefly sets forth the facts and procedural history necessary for the discussion herein.

On September 7, 2022, this case was reassigned to Judge Gregory B. Williams ("Judge Williams"). On September 12, 2022, Judge Williams referred the case to Magistrate Judge Christopher J. Burke ("Judge Burke") "to hear and resolve all pre-trial matters up to and including expert discovery matters (but not including summary judgment motions, *Daubert* motions, pre-trial motions in limine or the pre-trial conference), subject to 28 U.S.C. § 636(b) and any further

---

[1] The Plaintiffs are Bausch & Lomb Incorporated and PF Consumer Healthcare 1 LLC ("Baush" or "Plaintiffs"). The Defendant is SBH Holdings LLC ("SBH" or "Defendant").

Order of the Court." D.I. 40. On July 2, 2024, a further Oral Order of the Court expanded the referral to Judge Burke "to hear and resolve all pre-trial matters and motions, up to and including summary judgment motions, motions to strike, Daubert motions, and any other pending motions, subject to 28 U.S.C. § 636(b)." D.I. 143.

On September 3, 2024, the parties filed their motions for summary judgment (Plaintiffs filed five motions; Defendant filed one). D.I. 150; D.I. 153; D.I. 154; D.I. 155; D.I. 156; D.I. 157. The following day, Judge Burke entered an Oral Order instructing Defendant to "file individual one-page motions for each motion/ground that it raises in its motion for summary judgment." D.I. 170. On September 6, 2024, Defendant accordingly filed nine one-page summary judgment motions. D.I. 171; D.I. 172; D.I. 173; D.I. 174; D.I. 175; D.I. 176; D.I. 177; D.I. 178; D.I. 179.

On January 1, 2025, Judge Burke, having conferred with Judge Williams, entered an Oral Order instructing the parties to observe the Court's summary judgment ranking procedures ("Summary Judgment Ranking Procedures"). D.I. 242. In particular, that Oral Order stated:

> The Court, having conferred with Judge Williams regarding the pending summary judgment motions, hereby ORDERS as follows: (1) Judge Williams wishes that his procedures for summary judgment motions be utilized in the case, which are as follows: Any party that files more than one summary judgment motion shall number each motion to indicate the order in which the party wishes the Court to review its pending motions. The first motion the party wishes the Court to consider shall be designated #1, the second motion shall be designated #2, and so on. The Court will review the party's summary judgment motions in the order designated by the party. If the Court decides to deny a motion filed by the party, barring exceptional reasons determined *sua sponte* by the Court, the Court will not review any lower ranked summary judgment motions filed by the party; and (2) As a result, by no later than one week from the date of this Order, the parties shall file a joint letter of no longer than one page confirming whether the current numbering of the summary judgment motions constitutes the order in which the parties wish the Court to review their respective pending motions (and if not, indicating the order in which the Court should review the pending summary judgment motions).

D.I. 242.

On January 9, 2025, Defendant filed its Motion to Strike this Oral Order "as clearly legally erroneous and non-compliant with SBH's right to have its pending summary judgment motions heard." D.I. 245. A motion to strike, however, is not the appropriate vehicle to seek review of a Court order and, therefore, the Court construes Defendant's Motion to Strike as a motion for reconsideration or reargument. *See Hilton v. Brooks Cty. Sch.*, No. 20-cv-227-HL, 2023 U.S. Dist. LEXIS 41155, at *3 (M.D. Ga. Mar. 10, 2023) ("Essentially, the District argues that Hilton was improperly granted leave to amend. The District's briefings provide no legal support for the notion that a motion to strike is proper in this context, and it is clear that a motion to strike is not the correct vehicle for the District's arguments. Rather, the appropriate motion to address the Court's previous order granting leave to amend is a motion for reconsideration. Accordingly, the Court construes the present motion as a motion for reconsideration.").

Defendant concurrently filed its Motion to Stay the proceeding pending the Court's disposition of the Motion to Strike. D.I. 243. On January 15, 2025, Plaintiffs filed a combined answering brief in opposition to both Motions contending *inter alia* that the Motions are "are baseless, cumulative, and vexatious." D.I. 248. On January 22, 2025, Defendant filed a combined reply brief in further support of the Motions. D.I. 249.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

"The decision to grant a motion for re-argument or reconsideration is squarely within the discretion of the district court." *Amgen Inc. v. Amneal Pharms. LLC*, No. 16-cv-853-MSG, 2021 U.S. Dist. LEXIS 199918, at *4 (D. Del. Oct. 18, 2021) (citation omitted). "Motions for re-argument are granted only when the Court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension." *Id.* (citation omitted). "Reconsideration may be granted if the movant can show

3

an intervening change in controlling law, new evidence not available when the court made its decision, or a need to correct a clear error of law or fact to prevent manifest injustice." *Id.* (citation omitted). Neither motion is "an appropriate vehicle to reargue issues that the court has already considered and decided." *Acco Brands USA LLC v. Performance Designed Prods. LLC*, No. 23-cv-437-GBW, 2024 U.S. Dist. LEXIS 108389, at *1 (D. Del. June 18, 2024). "Reargument, like reconsideration, is granted sparingly." *Corning Inc. v. SRU Biosystems*, No. 03-cv-633-JJF, 2006 U.S. Dist. LEXIS 1896, at *3 n.1 (D. Del. Jan. 20, 2006). The proponent of the motion carries the burden. *See Ampro Computs., Inc. v. LXE, LLC*, No. 13-cv-1937-LPS-MPT, 2017 U.S. Dist. LEXIS 30867, at *2 (D. Del. Mar. 6, 2017).

**B.     Motion to Stay**

"District courts retain broad discretion to manage the docket and resolve discovery disputes." *Elfar v. Twp. of Holmdel*, No. 24-cv-1353, 2025 WL 671112, at *5 (3d Cir. Mar. 3, 2025); *accord IBM v. Zynga Inc.*, No. 22-cv-590-GBW, 2023 U.S. Dist. LEXIS 213050, at *2 (D. Del. Nov. 30, 2023) ("A court has discretionary authority to grant a motion to stay." (citing *Dentsply Int'l Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990))).[2] "Courts generally consider three factors to determine whether a stay is appropriate: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *IBM*, 2023 U.S. Dist. LEXIS 213050, at *2-3 (citing *inter alia*, *Am. Axle & Mfg. Inc. v. Neapco Holdings LLC*, No. 15-cv-1168-LPS, 2021 WL 616992, at *2 (D. Del. Feb. 17, 2021)). "A district court

---

[2] "Regional circuit law . . . governs . . . procedural matters pertaining to transfer and stay requests not unique to patent law." *In re Apple Inc.*, No. 2023-120, 2023 WL 2359699, at *1 (Fed. Cir. Mar. 6, 2023) (nonprecedential).

must assess each case on its own merits, and must also be mindful of its responsibility to keep its docket moving, so that it can provide litigants with timely and effective resolution of their claims." *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, No. 17-cv-1687-LPS-CJB, 2019 WL 126192, at *1 (D. Del. Jan. 8, 2019).

## III. DISCUSSION

This Discussion has the following Sections: (A) the Court denies Defendant's Motion to Strike; and (B) the Court denies Defendant's Motion to Stay.

### A. The Court Denies Defendant's Motion to Strike

Defendant's Motion to Strike challenges this Court's authority to use its Summary Judgment Ranking Procedures (which, as described above, state that the Court may elect to not resolve any summary judgment motion that is ranked lower than another summary judgment motion from the same party that the Court denies) in managing its docket. Essentially, Defendant contends that this Court must evaluate and specifically resolve all nine of its summary judgment motions. Even putting aside that the Chief Judge of this Court has already persuasively explained the propriety of the Summary Judgment Ranking Procedures,[3] Defendant is wrong.[4]

---

[3] *See Standing Order for Summary Judgment Practice in Patent Cases Assigned to Judge Connolly*, U.S. Dist. Ct. Dist. Del., https://www.ded.uscourts.gov/sites/ded/files/FINAL%20STANDING%20ORDER%20FOR%20SUMMARY%20JUDGMENT%20PRACTICE%20IN%20PATENT%20CASES.pdf (Apr. 30, 2021).

[4] The "effective management of the summary judgment process in patent cases requires . . . the court to be assertive in case management." 1-6 Patent Case Management Judicial Guide 6.1 (2025). The Patent Case Management Judicial Guide, in fact, illustrates "several" approaches in which courts may manage or "streamline" their resolution of summary judgment motions in patent cases. *Id.* at 6.1.5. The first approach requires the parties "to submit a letter brief summarizing each proposed motion" to the Court, after which the Court determines "which of the motions may be filed." *Id.* at 6.1.5.1. This approach "gives the court an overview of the possible summary judgment issues and their potential to narrow the case." *Id.* This approach also "allows the court to manage its docket with a better understanding of the impact of its decisions." *Id.*

5

It is well-established that matters of docket control, like the Summary Judgment Ranking Procedures here, "are committed to the sound discretion of the district court." *Mundy v. City of Pittsburgh*, No. 24-1685, 2024 U.S. App. LEXIS 30822, *4 (3d Cir. Dec. 5, 2024) (nonprecedential); *accord Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (holding that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"); *Drippe v. Tobelinski*, 604 F.3d 778, 783 (3d Cir. 2010) (confirming that district courts have "great deference with regard to matters of case management" and collecting cases). The Third Circuit has repeatedly held that it "will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." *See, e.g.*, *Mundy*, 2024 U.S. App. LEXIS 30822, at *4-5; *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817-818 (3d Cir. 1982).

The Court's Summary Judgment Ranking Procedures facilitate effective case management by "forcing the parties to focus on and identify their best arguments, which potentially reduces "the burden on the court," while still affording the Court "full view of the possible summary judgment issues and their potential to narrow the case." *See* 1-6 Patent Case Management Judicial Guide 6.1 (2025). In its motion, Defendant fails to demonstrate that the Summary Judgment

---

The second approach, notably, "limit[s] the number of summary judgment motions the parties can bring during the life of a case," "limit[s] the total number of pages of summary judgment briefing that can be filed," or "implement[s] a limit based on various permutations of the above." *Id.* at 6.1.5.2. This approach "has the significant advantage of forcing the parties to focus on and identify their best arguments, and it can significantly reduce the burden on the court." *Id.*

The third approach "allow[s] or encourage[s] several rounds of summary judgment hearings." *Id.* at 6.1.5.3. This approach "allows the court to limit its expenditure of resources on issues that need not be raised later in the case if the issues can be narrowed early." *Id.* The Patent Case Management Judicial Guide also discusses various "hybrid" approaches that the Court does not detail here. *Id.* at 6.1.

Ranking Procedures constitute an abuse of direction. Likewise, Defendant fails to make, and in fact could not make, a clear showing that the Court's Summary Judgment Ranking Procedures "have resulted in actual and substantial prejudice" to Defendant. *See Mundy*, 2024 U.S. App. LEXIS 30822, at *4-5. Again, the Summary Judgment Ranking Procedures implemented in this action compel "the parties to focus on and identify their best arguments," which potentially reduces "the burden on the court," while still affording the Court "full view of the possible summary judgment issues." *See* 1-6 Patent Case Management Judicial Guide 6.1. That a litigant may expend resources briefing numerous motions for summary judgment some of which the Court may summarily deny after considering and denying a higher ranked summary judgment motion under its Summary Judgment Ranking Procedures merely reflects the litigant's strategic choice to rank higher summary judgment motions that either are not supported by the law, contain genuine disputes of material fact that preclude summary judgment, or are otherwise without merit.

Also, the fact that Defendant asserted its nine grounds for summary judgment pursuant to the Court's previous Scheduling Order (D.I. 28; D.I. 29), which was entered prior to the case's reassignment to Judge Williams, does not provide Defendant with a blanket exemption from the Court's Summary Judgment Ranking Procedures. After reassignment of this case to Judge Williams, Magistrate Judge Burke specifically ordered the parties to follow Judge Williams' Summary Judgment Ranking Procedures and gave the parties time to adjust accordingly. *See* D.I. 242. Defendant could have, but failed, to request leave to re-file its motions for summary judgment after it became aware of the Court's Summary Judgment Ranking Procedures or make some other adjustment.

Importantly, that a scheduling order is in effect prior to the reassignment of a case to a new judge does not divest the new judge of his or her broad discretion and authority to manage his or

her docket, including through amendment of that scheduling order, to achieve the efficient and expedient resolution of cases. In this case, and in all other patent cases before the current judge, the Court utilizes its Summary Judgment Ranking Procedures to facilitate such efficient and expedient resolution. Without such procedures, this already extremely busy Court would be buried without end in countless motions for summary judgment - many of which clearly have no merit and can be disposed of summarily - and would be required to delay scheduled trials. This case has already been pending for more than four years.

Furthermore, the Court's Summary Ranking Procedures are consistent with Federal Rule of Civil Procedure 56 and the Court's Local Rules, neither of which guarantee litigants the right to file an unlimited number of motions for summary judgment or raise an unlimited number of grounds for summary judgment. Given that Defendant may, as procedurally and substantively appropriate, re-raise the arguments from its analyzed and denied summary judgment motions and its lower-ranked and summarily denied motions for summary judgment during or after trial (for example, in motions for judgment as a matter of law), there is no "substantial prejudice" to Defendant.

Defendant's remaining arguments are unavailing. *First*, Defendant cites *Kowalchuck v. Metro. Transp. Auth.*, 94 F.4th 210, 215 (2d Cir. 2024) for the proposition that "a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." D.I. 245 at 1. However, as described above, Federal Rule of Civil Procedure 56 does not authorize an unlimited number of motions for summary judgment. *Second*, Defendant contends that "[p]ublic policy favors resolution of cases by means of summary judgment." D.I. 245 at 2. However, such public policy does not divest the Court of its broad discretion and authority to manage its docket.

*Third*, Defendant asserts that the Court did not specify its Summary Judgment Ranking Procedures in its Order referring resolution of the summary judgment and *Daubert* motions to Judge Burke (D.I. 40). D.I. 245 at 2. However, it is indisputable that the Court's Summary Judgment Ranking Procedures are contained in its applicable form scheduling orders contained on its website, which are used in cases assigned to Judge Williams, and Magistrate Judge Burke specifically informed the parties by Oral Order that the Court's Summary Judgment Ranking Procedures were being employed in this action given the reassignment of the case to Judge Williams. Reassignment of cases to new judges happen sometimes and parties adjust. Nothing unique in this case exempts Defendant from adjusting and following the Court's case management procedures.

*Fourth*, Defendant contends that it only delineated its motions for summary judgment pursuant to the Court's Oral Order (D.I. 170) instructing it to do so, and that motions 2, 3 and 4, which were filed before the Court's Oral Order implementing its Summary Judgment Ranking Procedures (D.I. 242), "are actually a single motion for summary judgment for non-infringement under the doctrine [sic] of equivalents." D.I. 245 at 3. As such, Defendant appears to suggest that, even if the Court maintains its Summary Judgment Ranking Procedures, the Court should consider Defendant's second and fourth motions for summary judgment (which Defendant ranked, respectively, as the second and third motions to be decided) as one motion, since the Court considered Defendant's third motion for summary judgment (which Defendant ranked as the first motion to be decided). However, Defendant's second and fourth motions are substantively distinct from its third motion for summary judgment and, therefore, the Court need not, and indeed elects not to, consider the second, third and fourth motions as one motion. *Compare* D.I. 178 (Defendant's third motion for summary judgment) (contending "Federal Circuit Law Prohibits

Plaintiff from Broadening the Scope of the 'Fuzzy' Claims Based on the DOE"), *with* D.I. 179 (Defendant's second motion for summary judgment) (contending that "the doctrine of equivalents cannot apply regarding vitamin C level under the disclosure-dedication doctrine"), *and* D.I. 174 (Defendant's fourth motion for summary judgment) (contending that "the broadening effect of the term 'approximately' as to vitamin C content is limited by repeated unambiguous disavowals in prosecution history"); *see Int'l Bus. Machines Corp. v. Zynga Inc.*, No. 22-cv-590-GBW, D.I. 538 at 16 (D. Del. Aug. 29, 2024) ("The Court will review the [] [] grounds raised by [Defendant] in the order in which they appear and, 'once the Court denies summary judgment as to any single ground . . . , the Court will not address any summary judgment grounds that [appear after].'").

*Fifth*, Defendant contends that it was "procedurally prejudiced" for not previously having the "opportunity to be heard on" the Court's Oral Order implementing the Summary Judgment Ranking Procedures. D.I. 245 at 3. Again, issues of case management and the decision of whether to grant oral argument on a motion are matters within the Court's discretion. *See Maheswar Mikkilineni v. PayPal, Inc.*, No. 19-cv-1391-CFC-SRF, 2020 U.S. Dist. LEXIS 29914, at *4 (D. Del. Feb. 21, 2020) ("Local Rule 7.1.4 provides that oral argument on any motion may be scheduled upon the application of a party and that an application for oral argument may be granted or denied, in the discretion of the Court." (cleaned up)). Also, Defendant's Motion to Strike, construed as a motion for reconsideration or reargument, and the Court's resolution thereof, further dispel any claim of prejudice.

For the foregoing reasons, the Court denies Defendant's Motion to Strike.[5]

---

[5] The Court notes that Defendant's letter briefing in support of its Motions, consistent with Defendant's previous briefing in this action, contains flagrant typos and inconsistent formatting (including at least three different font colors) that do not aid Defendant's cause.

### B. The Court Denies Defendant's Motion to Stay

Since the Court denies Defendant's Motion to Strike, the Court denies Defendant's Motion to Stay as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Strike, Modify or Vacate (D.I. 245) and Defendant's Motion to Stay (D.I. 243).

\* \* \*

WHEREFORE, at Wilmington this 3rd day of April 2025, **IT IS HEREBY ORDERED** that Defendant's Motion to Strike, Modify or Vacate (D.I. 245) is **DENIED** and that Defendant's Motion to Stay (D.I. 243) is **DENIED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE